UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antoine J. China, #292911, | ) C/A No. 5:13-cv-00091-JMC-KDW |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Report and Recommendation |
| Lt. Marksberry; Major Nettles; Warden Fred B. | ) |
| Thompson; and William R. Byars, Jr., Director; | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 42, filed on September 16, 2013. The court entered a *Roseboro* Order[1] on September 16, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 43. Plaintiff filed a Response in Opposition to Defendants' Motion on October 7, 2013, ECF No. 49, and Defendant filed a Reply to Plaintiff's Response on October 18, 2013, ECF No. 50. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

   I.    Background

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Plaintiff, Antoine J. China, is an inmate currently housed at Perry Correctional Institution. ECF No. 49 at 1. The facts giving rise to Plaintiff's Complaint occurred at Lieber Correctional Institution (LCI). ECF No. 1 at 2. Plaintiff filed his Complaint on January 8, 2013, alleging claims of excessive force, gross negligence, and supervisory liability. *Id.* at 5-6. Specifically, Plaintiff contends that on October 24, 2011, Sgt. Marksberry approached Plaintiff's cell to retrieve his cellmate for a medical appointment. *Id.* at 4. Plaintiff claims that Sgt. Marksberry sprayed a large amount of chemical munitions inside the room and locked the door. *Id.* Thereafter, Plaintiff reported to medical and explained to the nurse that the mace was "hurting [his] chest and messing with [his] breathing." *Id.*

Plaintiff contends he reported the incident to Cpt. Catoe and told Catoe he would be pressing charges against Sgt. Marksberry. *Id.* In response, Cpt. Catoe told Plaintiff that "his Sgt. has authority to do what he want[s] and the issue was to bring control." *Id.* Thereafter, on April 19, 2012, the Asst. Warden for operations put out a Memorandum to the population because of several macing reports that indicated: "Let it be known that for the safety of officers and staff a few bursts of chemical munitions administered into the cell prior to entering the cell to make sure the inmate is unresponsive is permitted." ECF No. 1-1 at 1. Plaintiff argues that Memorandum violates the ADA standard, is not justifiable, and "clearly is a cover up towards officers' behavior." ECF No. 1 at 5. On August 20, 2012, Plaintiff claims he spoke with Major Nettles and asked to be placed in protective custody because Plaintiff was "suffering from emotional dreams" and wanted to be separated from Lt. Marksberry. *Id.*

Plaintiff seeks a jury trial on all claims, $100,000 in punitive damages from each Defendant, automatic departure in 2014 on parole, and any additional relief the court deems appropriate. *Id.* at 7.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.    Analysis

A.  Failure to Exhaust[2]

Defendants argue that Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing his § 1983 action. ECF No. 42-1 at 14. Pursuant to 42 U.S.C. Section 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, '[d]efendants may . . . be estopped from raising non-exhaustion as an

---

[2] Defendants address Failure to Exhaust as the final argument in their Motion.

4

affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

In their Motion, Defendants argue though Plaintiff attached a copy of his Step 1 Grievance to his Complaint, he has not provided evidence that he filed a Step 2 appeal of the denial of this grievance related to Defendant Marksberry. ECF No. 42-1 at 14. Moreover, Defendants maintain that there is no evidence that Plaintiff ever filed a grievance or exhausted the grievance procedure concerning Defendants Byars, Thompson, and Nettles. *Id.* Therefore, Defendants maintain that summary judgment and dismissal are appropriate as a matter of law because Plaintiff failed to exhaust his administration remedies prior to filing this § 1983 action. *Id.* In response to this argument, Plaintiff maintains he has "exhausted administrative duties prior to filing suit." ECF No. 49 at 6. However, Plaintiff does not state he filed a Step 2 grievance or offer a copy of the filing. *See id.* Plaintiff seems to argue that through no fault of his own he was prevented from availing himself of the administrative remedy. *See id.* In Reply, Defendants again maintain that Plaintiff was instructed to file a Step 2 appeal if he did not agree with the decision and has not presented evidence to the court that he has done so. ECF No. 50 at 2.

There is no proof that Plaintiff filed the Step 2 grievance in the record before the court. However, Plaintiff does not appear to concede that the failed to file a Step 2 grievance. It is Defendants' burden to present evidence of Plaintiff's failure to exhaust rather than Plaintiff's burden. *Anderson*, 407 F.3d at 683. Defendants have failed to meet this burden, either by including all of Plaintiff's grievances in the record or including an affidavit of the grievance records custodian. Accordingly, the undersigned finds that Defendants have not shown "there is

no genuine dispute as to any material fact" regarding Plaintiff's failure to exhaust his administrative remedies. Therefore, the undersigned recommends that Defendants' Motion for Summary Judgment for failure to exhaust be denied.

### B. Excessive Force

Defendants argue that Plaintiff has not presented any evidence from which a jury could reasonably find that any force used by Lt. Marksberry was applied maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to restore discipline. ECF No. 42-1 at 5-7.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendant Marksberry used chemical munitions on him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the

extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321.

"The fact that pepper spray was used in this incident . . . does not mandate that [p]laintiff's claim go forward, as the use of mace, tear gas or pepper spray by prison officials is not a per se violation of a prisoner's constitutional rights when used appropriately." *Townsend v. Anthony*, No. 0:03-2528-RBH-BM, 2006 WL 2076920, at *9 (D.S.C. July 24, 2006). The Fourth Circuit's decision in *Williams v. Benjamin*, 77 F.3d 756, provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. There, the *Williams* court recognized: "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain." *Id.* at 763 (internal citation omitted). While the use of mace on prisoners confined in their cells in not per se unconstitutional, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Id.* (internal citation omitted). "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis." *Id.* at 762.

Defendants argue that Plaintiff acknowledges that the force used by Lt. Marksberry was directed at his cellmate, Horace Wright, due to his refusal to obey verbal directives. ECF No. 42-1 at 6. Further, Defendants assert that there is no evidence whatsoever that Lt. Marksberry used any intentional force maliciously and sadistically in an attempt to cause Plaintiff any harm. In that regard, Defendants maintain that Lt. Marksberry states that he was unaware of any exposure to chemicals by Plaintiff. *Id.* at 7. Moreover, Defendants argue that because Plaintiff has failed to present any evidence that Lt. Marksberry used force "maliciously and sadistically for the very

purpose of causing harm" and not "in a good faith effort to maintain or restore discipline" that summary judgment is appropriate as a matter of law. *Id.*

Plaintiff responds by arguing that Defendant Marksberry did not follow SCDC Policy and his affidavit demonstrates that this prison official acted with sufficiently culpable state of mind. ECF No. 49 at 4. Further, Plaintiff argues he has presented material issues and evidence from which the jury can reasonably find that any and all force used by Defendant Marksberry was for harm and not to discipline. *Id.* at 5. In reply, Defendants argue that Plaintiff has failed to present evidence that Lt. Marksberry's action of administering one burst of chemical munition towards Inmate Horace Wright for his failure to follow verbal directives was done maliciously and sadistically for the purpose of causing the Plaintiff harm. ECF No. 50 at 2. Moreover, Defendants argue that unsupported speculation is not sufficient to defeat a summary judgment motion. *Id.*

There is no dispute that Defendant used mace in Plaintiff's cell. The need for the application of mace and circumstances giving rise to Defendant's use of mace are disputed. In his Complaint, Plaintiff claims that his cellmate was shaving when Sgt. Marksberry came to get his cellmate for medical transportation. ECF No 1. at 4. Upon hearing Plaintiff's cellmate's response that he was shaving, Plaintiff claims that Sgt. Marksberry "sprayed a large amount of chemical munitions inside the [cell] and lock[ed] the door." *Id.* Further, Plaintiff claims that Sgt. Marksberry left him suffering for at least twenty to thirty minutes. *Id.* In his Response to Defendants' Motion, Plaintiff states that he was sitting on his bunk when the event occurred. ECF No. 49 at 1. Further, Plaintiff argues that his cellmate was not refusing to leave their cell or sign a medical refusal when Defendant Marksberry sprayed mace into their cell. *Id.* Plaintiff offers his own affidavit and the affidavit of inmate Leroy McKenzie as evidence. In his own

affidavit, he attests that he was subjected to excessive force. Plaintiff's Aff., ECF No. 49-4 at 1. Additionally, Plaintiff states that he is "still having symptoms from this incident [and that] gas was sprayed from two (2) cans of chemical munitions." *Id.* Inmate McKenzie avers that there was no security risk, and that Officer Marksberry sprayed the mace into the cell and walked away. McKenzie Aff., ECF No. 1-1 at ¶4. However, McKenzie notes that "[t]here was a concern for one [inmate] to proceed out of his cell." *Id.* at ¶3. Finally, Inmate McKenzie attests that "[t]here was no level of disturbance brought about on the [inmate's] part." *Id.* at ¶5.

Considering the first and second *Whitley* factors and the additional guidance from *Williams*, the undersigned finds the Plaintiff has failed to present evidence that demonstrates Defendant Marksberry used mace for the very purpose of causing Plaintiff harm. Defendant Marksberry claims that he sprayed mace into Plaintiff's cell when Inmate Wright refused to either leave his cell for a medical transfer or sign a medical refusal form. Marksberry Aff., ECF No. 42-3 at ¶¶ 4-5. Additionally, Defendant Marksberry attests that he did not direct the mace at Plaintiff and believed that Plaintiff was on his bunk covered in a blanket when he maced Inmate Wright. *Id.* at ¶ 6. From his perspective, Marksberry was attempting to control an uncooperative inmate. The undersigned finds that the version of the events giving rise to Defendant Marksberry's "need for application of force" are in dispute. However, no evidence demonstrates any perceived malice was directed at the Plaintiff. The undersigned notes that Defendant Marksberry administered 31 grams of chemical munitions into Plaintiff's cell when Inmate Wright refused to obey an order to report for medical transit. ECF No. 42-5 at 4. Further, Officer Richard Smith, in assisting Defendant Marksberry, administered a total of four grams of chemical munitions into the cell. *Id.* at 6. A total of 35 grams of chemical munitions is not excessive, especially considering that the bursts were not directed at Plaintiff. *See Robinson v.*

*S.C. Dep't of Corr.*, No. 5:10-2593-HMH-KDW, 2012 WL 851042 at *7 (D.S.C. Mar. 13, 2012) (finding that defendants' two short bursts of chemical munitions, with the largest quantity of chemical munitions dispersed being 31 grams to be a small amount): *See Plummer v. Goodwin,* No. 8:07–2741–TLW–BHH, 2010 WL 419927 at *7 n. 4 (D.S.C. Jan. 29, 2010) (finding the use of 33.5 grams of chemical munitions to be a small quantity and "not constitutionally relevant").

In examining the third and fourth prong of *Whitley*, the undersigned notes that Plaintiff submitted medical records where he complained of chest pains and difficulty breathing.  ECF No. 49-2 at 2. However, Plaintiff sought medical treatment on November 3, 2011, ten days after the macing incident. *Id.* Moreover, there was no cause for the chest pain or difficulty breathing indicated in his medical records medical records, and Plaintiff was given Mylanta to relieve his symptoms. *Id.* Additionally, to the extent Plaintiff is alleging mental issues as a result of the making incident, the submitted medical records show Plaintiff was sent to mental health on February 8, 2011, to schedule an appointment because he stated he was "depressed and aggressive." *Id.* However, when Plaintiff went to the mental health clinic on February 9, 2011, months after the macing incident, Plaintiff stated that "he did not know why medical referred him to mental health." *Id.* Therefore, Plaintiff has failed to demonstrate that he suffered an injury as a result of being exposed to second-hand mace.[3] *See Duncan v. Gordon,* No. 8:06–cv–396–MBS, 2007 WL 1031939 at *8 (D.S.C. Mar. 29, 2007) (noting that prisoner's allegations that he suffered "breathing complications, chest pain, and mental depression from being sprayed with chemical munitions" failed to establish a serious medical need necessary to demonstrate an Eighth Amendment violation). Under the final *Whitley* prong, the undersigned notes that

---

[3] To the extent Plaintiff argues that Defendant Marksberry was deliberately indifferent to his medical needs, the undersigned finds such an allegation to be without merit. Defendant Marksberry claims that he did not know that Plaintiff needed medical attention, and Plaintiff does not claim that he told Defendant Marksberry that he needed medical attention.

Plaintiff's cellmate was failing to comply with a direct order. The Fourth Circuit has held that a prison official may use mace to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984).

The undersigned finds that Plaintiff has failed to demonstrate that any use of force was directed towards him. Therefore, there is no indication that Marksberry acted in a malicious manner or for the sole purpose of inflicting pain on Plaintiff. Simply put, second hand exposure to mace does not amount to a claim for excessive force under the Eighth Amendment. Moreover, the undersigned notes that courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321-22,. Accordingly, there is no genuine issue of material fact, and the undersigned recommends Defendants' Motion for Summary Judgment be granted to Defendants on Plaintiff's excessive force claim.

### C. Supervisory Liability

Defendants contend summary judgment is proper with regards to Plaintiff's claims of supervisor liability against Director Byars, Associate Warden Thompson, and Major Nettles in their individual capacities. ECF No. 42-1 at 4. Defendants argue that Plaintiff's Complaint is devoid of any personal involvement by Defendant Byars, Thompson or Nettles. *Id.* Based on the facts of this case, Defendants maintain that the evidence offered by Plaintiff "has no bearing on any issue as the chemical munition used by Lt. Marksberry was warranted by an actively non-complaint inmate." *Id.* Because neither Byars, Thompson, nor Nettles were personally involved in the incident described in the use of force incident described in Plaintiff's Complaint,

Defendants maintain that these Defendants are entitled to judgment as a matter of law as supervisory Defendants. *Id.* at 5.

In his Response, Plaintiff maintains that because of Defendants' titles and roles they were responsible for inmates' safety and for reviewing incident reports. ECF No. 49 at 3. Plaintiff states that though Defendants had no direct involvement in the incident they should be informed of the incident through proper chains of command. *Id.* Plaintiff argues that "whether the responsibility for the guard's action can be traced to a supervisor is the principal question." *Id.*

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation omitted). To successfully pursue such a theory, Plaintiff would have to demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*, *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

In his Complaint, Plaintiff contends that Defendants "violated safety procedure[s] which violated Plaintiff['s] civil and administrative procedure." ECF No. 1 at 5. Plaintiff's Complaint does not allege that the named Defendants were personally responsible for, or personally involved in, any of the excessive force incidents other than having supervisory roles. On the issue of supervisory liability, Plaintiff offers only the Memorandum of Defendant Thompson as evidence. ECF No. 1-1. However, Defendant Thompson's Memorandum does not demonstrate supervisory indifference or tacit authorization of subordinate misconduct. Rather, the

Memorandum indicates that officers may use chemical munitions "to verify that an inmate is truly unresponsive in a cell or not." *Id.* The use of chemical munitions is authorized in this limited circumstance and "for the safety of officers and staff." *Id.* Therefore, Plaintiff has failed to establish evidence of a causal link between any action taken by the SCDC staff and Defendant Marksberry. To the extent Plaintiff attempts to rely on the doctrine of supervisory liability as to his excessive force claim, the undersigned recommends that summary judgment be granted to Defendants Byars, Thompson, and Nettles as to this claim.

D. Deliberate Indifference to Serious Medical Need

Defendants contend that Plaintiff's allegations of deliberate indifference to a serious medical need fail as a matter of law. ECF No. 42-1 at 7. Specifically, Defendants maintain that Plaintiff has failed to demonstrate "a serious medical need" or "deliberate indifference." *Id.* at 9.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer*, 511 U.S. at 832-35; *Wilson,* 501 U.S. at 297; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care. Here, Plaintiff acknowledges that he received medical attention approximately twenty to thirty minutes after the macing incident occurred. ECF No. 1 at 4. Further, the Plaintiff offers no evidence that indicates he has suffered from a serious medical need and has been refused medical treatment. Although Plaintiff may disagree with the amount of treatment he received or may object to the medical staff's attitude towards him, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim.

E.   Qualified Immunity

Defendants argue they are entitled to qualified immunity because Plaintiff has failed to show that any of the Defendants violated any of his clearly established rights. ECF No. 42-1 at 9-10. In his Response, Plaintiff argues that the "use of force by Defendant Marksberry wasn't targeted specifically at Inmate Wright because the gas he sprayed comes out in a burst." ECF No.

49 at 6. Further, Plaintiff argues that in taking the facts in the light most favorable to him, Defendant Marksberry clearly violated a constitutional right and is not entitled to qualified immunity as a matter of law. *Id.*

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* at 301-02 (citations and internal quotation omitted).

Based on the analysis of the facts presented in the excessive force section above and considering the facts in the most favorable light of the Plaintiff, the undersigned recommends

granting qualified immunity to the Defendants. The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 42, be granted and that this case be dismissed. If the court accepts this recommendation, Plaintiff's pending Motion to Appoint Trial Counsel, ECF No. 51, will be moot.

IT IS SO RECOMMENDED.

June 12, 2014                                                     Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**